IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALLIED WORLD SURPLUS LINES INSURANCE COMPANY,           ) ) ) | |
| Plaintiff,           ) ) | Case No.: 21-cv-1156 |
| v.           ) ) | |
| SOUTHWESTERN ILLINOIS HEALTH FACILITIES, INC. dba ANDERSON HOSPITAL and PHYLICA LANG,           ) ) ) ) ) | *Jury Trial Demanded* |
| Defendants.           ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Allied World Surplus Lines Insurance Company ("Allied World"), by and through its attorneys, BatesCarey LLP, and for its Complaint for Declaratory Judgment, states as follows:

**NATURE OF THE ACTION**

1. This is an insurance coverage dispute. Allied World issued an Excess Insurance Policy to Southwestern Illinois Health Facilities, Inc. dba Anderson Hospital ("Anderson Hospital") for the **Policy Period**[1] of March 1, 2015 to March 1, 2016. The policy provides that, as a condition precedent to coverage under the policy, Anderson Hospital must provide Allied World with prompt notice of any claim under any **Underlying Insurance** or any circumstance that could give rise to a claim under any **Underlying Insurance** involving birth related injuries and brain damage.

2. In breach of these policy requirements, Anderson Hospital failed to provide Allied World with prompt notice of an October 22, 2015 medical incident involving Phylica Lang

---

[1] Terms in bold are defined in the Allied World policy.

("Lang") and the delivery of her baby boy, Kamden Durnell ("Kamden").  In further breach of these notice and reporting requirements, Anderson Hospital failed to provide Allied World with prompt notice of a lawsuit filed by Lang on August 12, 2016 alleging birth related injuries and brain damage.  Instead, the medical incident and lawsuit were first reported to Allied World on September 14, 2021, almost six years after the medical incident and more than five years after the lawsuit was filed.  Therefore, Allied World owes no coverage for the matter under the policy.

3. Other terms, conditions, and/or exclusions of the Allied World policy also bar or limit coverage for the matter.

**PARTIES**

4. Allied World is a corporation organized under the laws of Arkansas with its principal place of business located in New York.

5. Anderson Hospital is a corporation organized under the laws of Illinois with its principal place of business located in Illinois.

6. Lang is a citizen of Illinois.  Lang, in her capacity as the parent and natural guardian of Kamden Durnell, is the named plaintiff in the underlying lawsuit that Anderson Hospital reported for coverage to Allied World.  Lang is named as a Defendant only to the extent she is required to be named as a necessary party.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), 2201, and 2202, as complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and Plaintiff seeks declaratory relief with respect to a case of actual controversy within this Court's jurisdiction. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), in that

Defendants Anderson Hospital and Lang are residents within this judicial district and a substantial part of the events or omissions giving rise to this action occurred within this district.

## THE ALLIED WORLD POLICY

8. Allied World issued Excess Insurance Policy No. 0308-1911 to Anderson Hospital for the **Policy Period** of March 1, 2015 to March 1, 2016 (the "Policy"). The Policy contains a Limit of Liability of $10 million excess of the $5 million Limit of Liability of the Underlying Excess Policy issued by Steadfast Insurance Company ("Steadfast") and the $4 million per claim and $12 million aggregate self-insured retention. A true and accurate copy of the Policy is attached hereto as **Exhibit A**.

9. The Insuring Agreement defines the scope of the excess coverage provided by the Policy. Section I. of the Policy states:

> **I.   INSURING AGREEMENT**
>
> The Insurer will provide the **Insured** with insurance excess of the **Underlying Insurance** specified in ITEM 4 of the Declarations for claims first made against the **Insured** during the **Policy Period**. Except as otherwise provided in this Policy, coverage under this Policy will apply in conformance with the terms and conditions of, and endorsements to, the **Primary Policy** and any other **Underlying Insurance**. In no event will the coverage under this Policy be broader than the coverage under any **Underlying Insurance**. Coverage under this Policy will attach only after all **Underlying Insurance** has been exhausted by the actual payment of loss by the **Underlying Insurers**.

10. Section VI. of the Policy, as amended by Endorsement No. 4, contains the following notice and reporting requirements:

> **VI.   NOTICES AND REPORTING OF CLAIMS:**
>
> (A)   Reporting of Claims
>
> As a condition precedent to the Insurer's obligations under this Policy, the **Insured** will provide the Insurer with prompt notice of any claim under any **Underlying Insurance**, or any circumstance

that could give rise to a claim under any **Underlying Insurance**, involving any of the following:

1. unexpected deaths;
2. unanticipated neurological, sensory and/or systemic deficits; brain damage; permanent paralysis, including, but not limited to, paraplegia and quadriplegia; partial or complete loss of sight of hearing; kidney failure or sepsis;
3. birth related injuries, including, but not limited to, maternal or fetal death; anesthesia related injuries; infant resuscitation; shoulder dystocia; cerebral palsy;
4. severe burns, including, but not limited to, thermal, chemical, radiological or electrical burns;
5. severe internal injuries, including, but not limited to, lacerations of organs; infectious process; foreign body retention; sensory organ injury; reproductive organ injury;
6. any sentinel event;
7. class action suits; or
8. any claim reserved in excess of the lower of $2,250,000 or 25% of the limits of the **Underlying Insurance**.

(B) Quarterly Loss Run Reports

All claims and suits, including, but not limited to, those listed in subsection VI(A), should be summarized in a Quarterly Loss Run Report, which shall include, at minimum: a description of the nature of the claim, the date the claim was made, the date of loss, the claimant's name, the names of any involved parties, the status of the claim, and the amount of reserve established for each claim. The Quarterly Loss Run Report will serve as notice for those claims not subject to the above reporting criteria, and must be received by the Insurer, in writing (or electronically if the Insurer requests), no later than 10 days after the end of each calendar quarter.

(C) Notices

As a condition precedent to the Insurer's obligations under this Policy, the **Insured** will provide the Insurer with prompt notice of:

1. any settlement offer that the **Insured** intends to make, or any settlement demand made by any claimant, involving any of the matters listed above under IV(A) or any offer or demand that may implicate coverage under this Policy;
2. the payment of any claims under any **Underlying Insurance;**

    3. the cancellation or non-renewal of any **Underlying Insurance;**

    4. the modification of any **Underlying Insurance** by endorsement or otherwise; or

    5. any additional or returned premiums charged or allowed in connection with any **Underlying Insurance**.

  (D) Form and Delivery of Notice

    1. The entity named in ITEM 1 of the Declarations will be the sole agent for, and will act on behalf of all **Insureds,** with respect to all matters under this Policy including, but not limited to, reporting claims under VI(A), Quartery Loss Runs required under VI(B), giving notice under VI(C), and any communications regarding coverage under this Policy.

    2. Notice to any of the **Underlying Insurers** of matters listed in VI(A) or VI(C) will not be deemed sufficient to establish reporting or notice to the Insurer. Notice of a matter listed in subsections VI(A) or VI(C) must be sent in writing by certified mail, express overnight mail, or prepaid courier to the Insurer at the address specified in ITEM 5 of the Declarations

## THE REPORTED MATTER

  11. On October 22, 2015, Lang presented to Anderson Hospital for delivery of her baby boy, Kamden Durnell, and, shortly thereafter, Kamden developed a herpes infection and other complications (the "Medical Incident").

  12. On December 22, 2015, Anderson Hospital notified Steadfast of the Medical Incident.

  13. On August 12, 2016, Lang filed a complaint, captioned *Phylica Lang, as Parent and Natural Guardian of Kamden Durnell, a minor v. Southwestern Illinois Health Facilities, Inc. d/b/a Anderson Hospital, Christopher R. Wangard, M.D., Paul F. Grimm, III, M.D., SSM Health Cardinal Glennon Children's Medical Center, David B. Herman, M.D., and Bard & Didriksen Pediatrics, P.C.*, Case No. 16-L-429, in the Circuit Court for the Twentieth Judicial

Circuit, St. Clair County, Illinois (the "Lawsuit"). Lang filed a Third Amended Complaint on November 7, 2018 (the "Operative Complaint"). A true and correct copy of the Operative Complaint is attached hereto as **Exhibit B**.

14. Lang alleges that the Lawsuit defendants, including Anderson Hospital, were negligent in addressing during Kamden's delivery Lang's history, status, and diagnosis of herpes simplex virus and that, as a result, Kamden became infected with herpes simplex virus and sustained injuries, including brain damage. (Ex. B, ¶¶ 9-10).

15. Upon information and belief, Anderson Hospital notified Steadfast of the Lawsuit in 2016.

16. The Medical Incident and Lawsuit were first reported to Allied World on September 14, 2021.

## INSURANCE COVERAGE DISPUTE

17. Anderson Hospital seeks insurance coverage from Allied World for the Lawsuit under the Policy.

18. Allied World disputes that coverage exists for the Lawsuit under the Policy.

19. An actual, present, and bona fide controversy exists between Allied World, on the one hand, and Anderson Hospital, on the other hand, with respect to whether there is insurance coverage for the Lawsuit under the Policy.

20. A judicial declaration is necessary to establish the parties' rights and duties, if any, under the Policy.

## COUNT I – DECLARATORY JUDGMENT
### (Breach of Notice and Reporting Requirements)

21. Allied World incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 21 as though set forth fully herein.

6

22.     Section VI(A) of the Policy, as amended by endorsement, provides that, as a condition precedent to Allied World's obligations under the Policy, the **Insured** will provide Allied World with prompt notice of any claim under any **Underlying Insurance**, or any circumstance that could give rise to a claim under any **Underlying Insurance**, involving unanticipated neurological, sensory and/or systemic deficits, brain damage, or birth related injuries.

23.     Section VI(B) of the Policy, as amended by endorsement, provides that all claims and suits, including but not limited to, those listed in subsection VI(A), should be summarized in a Quarterly Loss Run Report, which shall include, at minimum: a description of the nature of the claim, the date the claim was made, the date of loss, the claimant's name, the names of any involved parties, the status of the claim, and the amount of reserve established for each claim.

24.     Section VI(C) of the Policy, as amended by endorsement, provides that, as a condition precedent to Allied World's obligations under the Policy, the **Insured** will provide the Insurer with prompt notice of any settlement offer that the Insured intends to make, or any settlement demand made by any claimant, involving any of the matters listed above under IV(A) or any offer or demand that may implicate coverage under this Policy.

25.     Section VI(D) of the Policy, as amended by endorsement, provides that notice to any of the **Underlying Insurer** of matters listed in VI(A) or VI(C) will not be deemed sufficient to establish reporting or notice to Allied World.

26.     In breach of these notice and reporting requirements, the Medical Incident and Lawsuit were first reported to Allied World on September 14, 2021, which is almost six years after the Medical Incident occurred and more than five years after the Lawsuit was filed.

27.     Accordingly, the Policy does not provide coverage for the Lawsuit.

WHEREFORE, Plaintiff, Allied World Surplus Lines Insurance Company, prays that this Court enter a judgment in its favor and against the Defendants, awarding the following relief:

a. A declaration that no coverage is available for the Lawsuit under the Policy;

b. For costs of suit incurred herein; and

c. For such other and further relief at law or in equity that the Court deems just and proper.

## RESERVATION OF RIGHTS

The Policy contains terms, conditions, and exclusions that may be relevant to the Lawsuit but that are not currently implicated by this declaratory judgment action. Nothing in this Complaint should be construed as a waiver by Allied World of any coverage defenses at law, in equity, or under the Policy. Allied World continues to reserve all rights with respect to any claim for coverage made under the Policy where appropriate, and waives none.

## JURY DEMAND

Allied World demands a jury trial.

Dated: September 20, 2021				Respectfully submitted,

ALLIED WORLD SURPLUS LINES
INSURANCE COMPANY

By:	/s/ David F. Cutter
	David F. Cutter (dcutter@batescarey.com)
	Jonathan R. Walton (jwalton@batescarey.com)
	BatesCarey LLP
	191 North Wacker Drive, Suite 2400
	Chicago, Illinois 60606
	(312) 762-3100

2834210